22-363 Sankalp Bhatnagar v. The New School, Parsons School, et al. I understand for the appellant we have Mr. Berman.  And Mr. Berman, I understand you would like to reserve two minutes for rebuttal. Is that right? Correct. Okay, proceed. Can you hear me? Do I have it right? Beautiful. Okay, thank you. I may please the court. My name is Fred Berman from the firm of Sheppards, Berman & Dalforte, attorneys for the appellant Sankalp Bhatnagar. I first want to address the disability discrimination claim. On that claim, Judge Schofield's ruling overstepped the role of the court and basically usurped the role of the jury and must be reversed. The evidence presented by appellant, consisting largely of documentary evidence and admissions of New School's own personnel, was more than sufficient to preclude summary judgment. The claim requires a determination of New School's state of mind, that is, whether New School took the extraordinary and unprecedented steps of denying an extension of time normally routinely granted and instead graduating a student without a thesis, even though the school's published standards required a completed written thesis to graduate. I've got a number of questions. Can we start off with the prima facie case? If they had given him an A as opposed to a C, would that have been an adverse action? Yes. And why is that? Because it still would have deprived him of the experience of writing a thesis, which was part of the academic development he was seeking. He already had a master's degree before he went to this program from a prestigious institution. So you conceded that we're not actually quibbling about the grade. We're talking about two things. We're talking about the thesis and the experience. In addition, he still wouldn't have a shareable thesis, which is something he was going to need to go on to a Ph.D. program. I totally hear you. So one is the thesis and then the other one is the experience. With respect to the thesis, they invited him to finish the thesis, right? So what you're actually, multiple times, they gave him the deadlines, they even extended it. So what you're actually arguing is that the injury, as I understand it, was not being given the time that he unilaterally declared that he needed. That he needed. The time they gave him was useless to him. He was doing a project that required research in the archives. I'm sorry, counsel, can I just ask you, when a judge is asking you a question, please stop talking. I'm sorry, I haven't been able to hear Judge Peirce's questions. I'm sorry. Okay, so the issue is not that he doesn't have a thesis. You're arguing is that he wasn't given the time that he unilaterally declared that he needed. Is that what we're about? Yes, that he felt that he needed. Okay, and isn't there a process, right? He was supposed to go through a process where he requested an incomplete, where he declared himself as disabled. He actually denied a request to meet with him in person. So what I'm left wondering is if you are asking us to create new law that says that a person can unilaterally declare what is a reasonable accommodation when someone has not alleged that they are disabled nor has gone through the accommodation process. This isn't a reasonable accommodation case. We're not saying that he was entitled to an extension of time because of mental health issues. What we are saying is that normally students are granted extra time quite routinely. There's evidence it happens every year that the students are granted extensions. And he was granted an extension. Well, he was granted an extension that was not useful to him because he really needed access. So you're saying as an extension he wanted something longer. He wanted an extension into the following fall semester, which, again, extensions that long and longer have been routinely granted. You had testimony from Jamer Hunt about the two students he was testifying. He was asked, what was the deadline you said? He said, no deadline, just whenever they finished it. Both his testimony and Lisa Norton's. But we don't actually know whether or not those students went through the process where they were willing to meet, whether they declared themselves needing the extra time in a formal way, right? That, to me, one of the things that I'm struggling is that I feel like this case is not being argued as a reasonable accommodation case, but yet all of the elements of the way that you are presenting it come down to whether or not it was a reasonable accommodation case. Can we move on? Can you let me ‑‑ you said that there were two reasons. One had to do with the thesis, and then the other had to do with the experience. Surely you don't think that there's a cause of action for someone not having the academic experience that they hoped for. Is that right? Because I can imagine a lot of people with bachelor's degrees in liberal arts and the like were wondering whether or not they got the return on the investment that they wanted. No, I think when you enter a program, that the centerpiece of the program is a thesis. It requires a thesis as a mandatory component. Yes, I think that you can't be graduated without a thesis. Well, what was actually required as I read it was a presentation, which he was given the opportunity to do, and a comprehensive documentation of the thesis project that organizes the process into a coherent and compelling account. That to me suggests some squishiness. That he didn't do, and it also is defined later in the same document as to what that written component is. It says the student must produce a printed thesis book. Or a chapter. Or a chapter of a thesis book, which he did not do. And the people who evaluated his work, Penin and Peron, both said he didn't do that. But, Counsel, wasn't there some evidence that when your client applied to the program, he wasn't really interested in a thesis? He was more interested in working with two particular individuals. Professors that had moved from the United Kingdom to this particular school. No, he has explained that in his declaration. Yes, he was interested in working with those people, but he understood before he came that he wasn't going to be able to. He was interested in getting the research and writing credentials that he would need to go on to a Ph.D. program. While he would have preferred to get that through some kind of non-degree research with those individuals or others. He didn't. That wasn't available. Counsel, I'm going to interrupt you again. Again, just to be clear, when you hear a judge start to ask you a question, please stop and listen to the question. I'm sorry. Thank you, Judge Nardini. Counsel, I understood your answer to my previous question. I want to move on to a different argument that you make to try to understand it. So, my question is this. You argue that under the regulations, if a student has a NAF and you don't dispute he had an incomplete or a NAF, he wasn't going to pass the course. He would be entitled to a NAF, at which point he then would be given the chance to repeat the program. Correct? Yes. So, you agree that he would have been entitled to a NAF, and you make that argument, correct? I think from the point of view of the disability discrimination claim, no, because that would have been discrimination. That's not what they would do. The only reason they weren't willing to do this in this case is because they thought he was mentally ill and dangerous and they wanted to get him out. Do you agree? But, yes, from a contract point of view, they could have given him out. Counsel, I'm sorry. Again, for everybody, this is how we operate in every case. When you hear a judge ask a question, stop. So, assuming he was entitled to a NAF, which I believe you make that argument, when I looked at the regulations at A827, you make the argument that if he had received a NAF, he would be automatically entitled to repeat the program. But the regulations for graduate students under page A827 of the appendix, it says with approval. So, there is no automatic right to repeating the program. Would you agree with that? Yes, but we believe there's evidence that that was routinely granted for students who got NAFs. I guess I wouldn't say he was entitled to a NAF. I'd say they could have given him a NAF. But had they given him a NAF, there was testimony from Ms. Pennin where she was being questioned about the student who had failed the thesis course and retook it. And was asked, well, what happens when you fail the thesis course? She answered, if you fail the course, you will be allowed to take it again. That was her answer. I think there is evidence that students routinely are given that opportunity. And frankly, we think that's one of the reasons they did what they did and took this extreme case of ignoring their own rules to graduate Sankalp. It was the only way they could really be rid of him with his not having any ability to appeal or take the courses again. Because the rules do say that when you graduate, the record's closed, grades are finals, nothing can be changed. We think that's why they did this. Counsel, can I ask you as a question of law, not on the facts of this case. You would agree that one of the prongs to make out a prima facie case of the Rehabilitation Act is to show that the plaintiff was excluded from participation in whatever program solely by reason of handicap. Yes. You would agree that that is the standard, correct? Yes. And you would agree that if we agreed with the district court that there was no genuine issue of material fact, that there were, in fact, additional reasons, even if one of them was discrimination by reason of handicap, your client would lose, right? You don't have to agree with whether that is, in fact, the case on this record. But as a proposition of law, would you agree that's correct? Yes, I agree with the proposition of law that the standard is solely, but I think in the context of this record and all the evidence adduced, and for the reasons we presented in our brief, that there's sufficient evidence, substantial evidence that the reasons given were pretextual and were not the real reasons. That's different. Were not the real reasons, and that the real reason he was not given an extension, was not allowed to complete his thesis, was solely because of their perception of his mental illness. Okay. You reserve two minutes. Why don't we hear from Mr. Collins for the epilate? Good morning, Your Honors. Can you hear me okay? Yes. Thank you. May it please the court. Michael Collins, Bon Shanigan King for the epilate, New School, Parsons School of Design. I don't think you'll be surprised to hear me say that the district court got this decision right, and that plaintiff is, in fact, asking this court to make new law in regard to an educational claim. I think we need to, at the outset, sort of look at the fact that Mr. Batnagar precipitated all the events and circumstances that brought us here today. The factual record reveals that he exhibited an unusually self-absorbed and entitled approach that I think we've made clear throughout our papers. His own audio recordings demonstrate that, as do notes that were taken when he was being open and candid before he made a federal case out of Parsons awarding him his degree. I urge the panel to pay special attention to Appendix 932 to A971, which I believe revealed the truth of Mr. Batnagar's struggles at Parsons in the spring of 2018 and conclusively demonstrate that he was to blame for all of his difficulties. Now, could you just tell us, within the framework of the Rehabilitation Act, what is the consequence of the argument you've just made? You say he's to blame. What does that mean? Does that mean there was no adverse action? Does it mean that a perceived handicap was not the sole reason for their actions? Just plug that into the legal framework, because I'm not sure where you're going with this. I think it contextually sort of frames the issue, and then I think it does relate to the fact that there was no adverse action. And clearly, and specifically, that whatever he says, the perception of him was, was not the sole cause of the degree being awarded. That there were many other causes, and that he precipitated all of that. That there was a long record of people trying to work with him and showing concern for him, and rather than saying, hey, these people actually care about me, he took umbrage and sort of created a conflict with his professors, and that led to him basically saying, I won't work with you anymore, to the program director, on his own, waiting about five weeks where he does nothing on his thesis, and then sending an email where he says, I'm afraid of you. And amazingly, she responds the next day, and he says he never got the response, and it's this very conciliatory response, the end of which is hopefully we'll be able to work together with no fear in sight. So, can I just ask you, is the argument you're putting forward here, that there is so much overwhelming and uncontroverted evidence in the record, that he was difficult and non-compliant with the program, that that alone provides an additional reason, even if one accepts the plaintiff's view that he was discriminated in part based on his handicap, hypothetically, that there is enough evidence of other reasons, such as his uncooperativeness and non-compliance, that that would defeat the third prong of the printed fashion case?  To focus on a couple of particular points, which I think the panel has alluded to, plaintiff's only plan for his thesis involved him doing additional coursework in the fall, which is something plaintiff has denied. He admitted that in writing to Jane Perone, that's in our brief at page 26, and to the University Ombuds person who he contacted in June of 2018, after Jane Perone gave him a deadline in June. No TD student was permitted to enroll for additional coursework after the second year of the program, absent exceptional circumstances, such as a medical leave of absence. There's no proof in the record to the contrary. Plaintiff's claim in their reply at page 19, note 5, that New School refused to provide any discovery requested by plaintiff regarding other extension requests, that's just false. It's a fictional assertion. And there's no evidence that anybody got what he says he was entitled to, which is enrollment, taking coursework for a fifth semester. Plaintiff also made a lot of Professor Norton's testimony, who is a professed outlier and a maverick. And even Professor Norton had to admit that it could be argued, or that her colleagues had basis to believe that Mr. Batnagar was intentionally abusing the rules of the system. Again, which goes to the third prong of the prima facie case, and also goes to the legitimate non-discriminatory reason. That factor comes up twice in the analysis, in the prima facie case, and then after, well, why did you, New School, make the decision to grant him the degree? And Norton says that Penning did an amazing job in a tricky situation. One other point I want to make is there is one case that I think is sort of helpful in framing the discrimination issue, which is, hopefully I'll pronounce it correctly, Rosese v. Sessions, 725F Appendix at 68. That's a Second Circuit 2018 summary order. In that case, there was a question about an FBI agent's mental health. And despite the fact that the special agent in charge of the office, making a statement that he was worried about that agent's mental and emotional stability, the court found that that was not sufficient to conclude that he was regarded as disabled. And that was the case, even though there were two other actors, another agent and a supervisor who had expressed opinions to the special agent about Rosese's mental condition. And that, again, was not enough evidence. I think that that's somewhat analogous to Jane Perrone in this situation, who was the decision maker. I want to credit your colleagues' argument and evidence that extensions were routinely granted. How are we to analyze where the Berm limit on what the extensions he was to be granted, how are we to analyze how that fits into this framework? And I will concede that I'm struggling to see where that fits, because they keep professing that they're not making a reasonable accommodation claim. So where does the extension, and does it, if we were to believe that others were routinely given extensions along the lines of what he was requesting, what does that do to your client's position? Okay, so first, there were extensions granted for more time not to enroll and continue taking courses. So that's the first factual point. On the legal point, I, too, am confused, Your Honor, about the claim that this is not a reasonable accommodation case. We actually made the argument in our brief and said, and I don't have the cases in front of me, but they're cited, that a plaintiff is not entitled to any accommodation they demand, but they're entitled to what is reasonable under the circumstances. And so he got one extension and then an additional extension. And I think you can read from the correspondence with Dean Perone where she says, I want you to give me a schedule of deliverables and tell me what you're going to do with the time. And he doesn't do that. So he doesn't even advocate for himself and explain, here's why I need even more time. He just ignores it and assumes that I'm going to get whatever time I want. So I think there's no basis to argue, even if you look at it as a reasonable accommodation issue, that the time that he got was not reasonable under the circumstances. But what I heard you say a moment ago was that he didn't appropriately counteroffer, that there is a process for requesting time. There's a process for requesting an incomplete. There's approval that's needed, and he didn't do any of that as well. He didn't do a lot of those things, including with regard to the incomplete. He was graciously granted that, despite the fact that he says that people were hostile and aggressive to him. They gave him the incomplete, and the language in the course syllabus, which plaintiff wants to use to their advantage in one respect but perhaps not in others, says that under unusual and extenuating circumstances, such as when the student's academic life is interrupted by a medical or personal emergency, an eye will be given. They gave him the eye because no one was looking to harm him. They were trying to work with him and figure out how to work with a difficult student to make it so that everybody could get what they, you know, sort of a win-win situation. And it was not possible in this circumstance because Mr. Batnagar is not a reasonable person, unfortunately. Counsel, is it your view, though, I thought I heard Appellant's counsel disclaim, and we can ask him to confirm this in rebuttal, but I thought I heard him disclaim the theory that this is a reasonable accommodation case. So it would seem to me that if that is in fact what he has disclaimed, it wasn't litigated this way and he's claiming it's not that, then I don't think any, even if we argue now and there were a reason to find a reasonable accommodation claim, I mean, that's water under the bridge, right? I mean, he's got to stick with the theory that he litigated, right? I believe he's abandoned that, Judge. Yes. We'll ask him to confirm that. But we've heard from you. Thanks very much. Thank you. Mr. Berman, you have two minutes for rebuttal. Could you just clarify that for my sake at least? Is it your view that this is in effect a reasonable accommodation case? Or I thought on your opening statement you said it is not a reasonable accommodations case. Could you just clarify that one way or the other? You're correct. It's a discrimination in not granting him what would have been granted but for their perception that he was mentally ill. Okay. Thank you for that. And then you can take the rest of your time at whatever point you want. With respect to Mr. Collins' various statements about Mr. Batnagar being self-absorbed and entitled and unreasonable, we, of course, disagree with that. We have presented evidence that's summarized in our brief and our reply brief that really the full context hasn't been given. But the more important point is that that is not the reason why they, the true reason they denied the extensions here. You have to look at that in the context of what they said. Ms. Pennin's fear, her admission, her fear emanated from her perception that he was mentally ill. Ms. Perrone's email suggesting that she's viewing this as a mental health challenge. The many emails in September when the dean was considering his request to de-confer his degree and let him complete his thesis, stating that he's mentally ill, something when the provost saying this isn't an academic issue, it's a mental health issue. And in his deposition, it was clear that came from the executive dean. I'm sorry, so I'm just, I'm still trying to struggle on what this claims looks like. Are you now suggesting that the denying of the extension was the adverse action? Yes. The denying of the extension is the adverse action. The denial of extension and graduating him without a degree, without a thesis, is the adverse action. Okay. And, counsel, I think we have run out the clock, and I think we have your arguments, so thank you very much to both counsel. We will take this under advisement.